1

2

3

4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    JUAN GARCIA, et al.,                          Case No.  21-cv-03519-HSG

8                    Plaintiffs,                   **ORDER GRANTING IN PART AND
                                                   DENYING IN PART MOTION TO**
9           v.                                     **DISMISS**

10   COUNTY OF NAPA, et al.,                        Re: Dkt. No. 24

11                   Defendants.

12

United States District Court
Northern District of California

13          Before the Court is Defendants Napa County and Napa County Sheriff's Sergeant David

14   Ackman's motion to dismiss portions of Plaintiffs Eva Lopez, Eduardo Lopez, Maria Del Carmen

15   Bazan Martinez, Jose Garcia Flores, A.G., and E.G.'s complaint, for which briefing is complete.

16   *See* Dkt. Nos. 24 ("Mot."), 29 ("Opp."), 31 ("Reply").  The Court heard oral argument on the

17   motion on January 6, 2022.  *See* Dkt. No. 38.  For the reasons detailed below, the Court GRANTS

18   IN PART and DENIES IN PART Defendants' motion to dismiss.

19   **I.     BACKGROUND**

20          For purposes of deciding the motion, the Court accepts the following as true:

21          On October 5, 2020, Defendant Napa County Sheriff's Sergeant David Ackman pulled

22   Plaintiff Juan Garcia's vehicle over on Kaiser Road near State Highway 221 in Napa County for

23   allegedly driving without headlights on.  Thirty-eight seconds after getting out of his vehicle, Mr.

24   Garcia was shot six times by Sgt. Ackman.  Mr. Garcia was transported to the hospital where he

25   underwent several surgeries and was placed on life support.  The following evening, Mr. Garcia

26   was pronounced dead.

27          Plaintiffs Eva Lopez, Eduardo Lopez, Maria Del Carmen Bazan Martinez, Jose Garcia

28   Flores, A.G., and E.G., bring five claims for relief under 42 U.S.C. § 1983 and California statutes

1    against Defendants Napa County, Sgt. Ackman, and Does 1-10:  (1) loss of familial association

2    with Mr. Garcia under the First and Fourteenth Amendments; (2) municipal liability under 42

3    U.S.C. § 1983; (3) threats, intimidation, or coercion interfering with the exercise or enjoyment of

4    rights under federal or state law; (4) public entity liability for employee and agent conduct; and (5)

5    wrongful death.  *See generally* Dkt. No. 18 ("Compl.").

6           On September 2, 2021, Defendants Napa County and Sgt. Ackman moved to dismiss

7    Plaintiffs' first count for loss of familial association as to Plaintiffs Eduardo Lopez and Eva Lopez

8    for lack of standing.  *See* Mot. at 5-7.  Defendants also move to dismiss Plaintiffs' second count

9    for municipal liability under 42 U.S.C. § 1983, otherwise known as a *Monell* claim, for failure to

10   state a claim.  *Id.* at 7-11.  In the event the Court denies the motion to dismiss as to the *Monell*

11   claim, Defendants request that the Court bifurcate the individual liability claims and the *Monell*

12   claim.  *Id.* at 11.

## II.    LEGAL STANDARD

14          Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain

15   statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

16   defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

17   granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the

18   complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

19   *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule

20   12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on

21   its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible

22   when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

23   the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

24          In reviewing the plausibility of a complaint, courts "accept factual allegations in the

25   complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

26   *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless,

27   courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

28   fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

United States District Court
Northern District of California

1   2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).  The Court

2   also need not accept as true allegations that contradict matter properly subject to judicial notice or

3   allegations contradicting the exhibits attached to the complaint.  *Sprewell*, 266 F.3d at 988.

4   **III.    DISCUSSION**

5           **A.     Standing to Bring Substantive Due Process Claims**

6           Plaintiffs' first cause of action alleges that Defendants deprived Plaintiffs of their

7   constitutional rights to "companionship, society, and support" with Mr. Garcia through the use of

8   deadly force against him.  Compl. ¶¶ 32, 33.  Such claims may be brought under either the First

9   Amendment or the Due Process Clause of the Fourteenth Amendment.  *Erotic Serv. Provider*

10  *Legal Educ. & Rsch. Project v. Gascon*, 880 F.3d 450, 458 (9th Cir. 2018) ("There are two distinct

11  forms of freedom of association: (1) freedom of intimate association, protected under the

12  Substantive Due Process Clause of the Fourteenth Amendment; and (2) freedom of expressive

13  association, protected under the Freedom of Speech Clause of the First Amendment."), *as*

14  *amended*, 881 F.3d 792 (9th Cir. 2018); *see also Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir.

15  2018) ("[W]e have held that claims under both the First and Fourteenth Amendment for

16  unwarranted interference with the right to familial association could survive a motion to dismiss."

17  (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001))).

18                  **i.      Plaintiff Eva Lopez**

19          Defendants challenge Plaintiff Eva Lopez's standing to bring a claim for loss of familial

20  association.  Defendants argue that Ms. Lopez's claim fails because she was not married to Mr.

21  Garcia and therefore does not have any constitutionally protected rights that were violated by Mr.

22  Garcia's death.

23          The Supreme Court has recognized that "choices to enter into and maintain certain intimate

24  human relationships must be secured against undue intrusion by the State because of the role of

25  such relationships in safeguarding the individual freedom that is central to our constitutional

26  scheme."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984).  This freedom to enter into

27  intimate human relationships is not protected by the First Amendment, but by the Fourteenth

28  Amendment.  *See IDK, Inc. v. Cnty. of Clark*, 836 F.2d 1185, 1192 (9th Cir.1988) ("In protecting

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    certain kinds of highly personal relationships, the Supreme Court has most often identified the

2    source of the protection as the due process clause of the fourteenth amendment, not the first

3    amendment's freedom to assemble.").

4         "[T]he freedom to enter into and carry on certain intimate or private relationships is a

5    fundamental element of liberty protected by the Bill of Rights." *Bd. of Directors of Rotary Int'l v.*

6    *Rotary Club of Duarte*, 481 U.S. 537, 545 (1987).  These constitutional protections are not

7    restricted to relationships among family members, but instead "may take various forms, including

8    the most intimate." *Id.*  "[T]he relationships protected by the fourteenth amendment 'are those

9    that attend the creation and sustenance of a family' and similar 'highly personal relationships.'"

10   *IDK, Inc.*, 836 F.2d at 1193 (quoting *Roberts*, 468 U.S. at 618-19) (individuals "involved in

11   procreation, raising and educating children, cohabitation with relatives, or the other activities of

12   family life" develop the deep attachments or commitments worthy of Fourteenth Amendment

13   protection).  "The factors relevant in determining whether a particular association can claim the

14   protection of the due process clause are the group's size, its congeniality, its duration, the purposes

15   for which it was formed, and the selectivity in choosing participants." *Id.*

16        The Complaint alleges undisputed supporting evidence of a deep intimate association

17   between Ms. Lopez and Mr. Garcia.  Plaintiffs allege that Ms. Lopez "is the longtime partner and

18   de facto wife" of Mr. Garcia, who in turn was "a loving companion to his longtime life-partner,

19   [Ms. Lopez]." Compl. ¶¶ 4-5, 7, 21.  And the Complaint states that Ms. Lopez and Mr. Garcia

20   lived together as a family with their three children, A.G., E.G., and Eduardo Lopez for over 20

21   years. *Id.*

22        Defendants argue that Ms. Lopez lacks standing to bring a claim for loss of intimate

23   association because "neither the First nor Fourteenth Amendments extend standing to a 'de facto

24   wife,' a term used to describe Lopez Hernandez, Decedent's girlfriend." Mot. at 7.  Defendants

25   ask the Court to analogize constitutional intimate-association claims to wrongful death actions –

26   for which California courts have limited recovery to surviving spouses that were legally married.

27   However, this comparison is inapposite because "[w]rongful death actions under California law

28   are purely statutory." *Garcia v. Douglas Aircraft Co.*, 133 Cal. App. 3d 890, 893 (Ct. App. 1982)

4

1    ("Because it is a creature of statute, the cause of action for wrongful death exists only so far and in

2    favor of such person as the legislative power may declare." (citation and quotation marks

3    omitted)). Constitutional rights, by contrast, are not merely created by statute, and as the Supreme

4    Court has stated, constitutional protections for intimate association are not restricted to

5    relationships among family members. *Bd. of Directors of Rotary Int'l*, 481 U.S. at 545.

6           Accordingly, the Court denies Defendants' motion to dismiss Ms. Lopez's claim for loss of

7    familial association for lack of standing.

8                       ii.    **Plaintiff Eduardo Lopez**

9           The Court next evaluates Mr. Lopez's standing to bring a claim for loss of familial

10   association based on the Fourteenth Amendment on his own behalf.[1]  Defendants argue that Mr.

11   Lopez's claim fails because he is an adult biologically unrelated to Mr. Garcia and therefore did

12   not have any constitutionally protected rights violated by Mr. Garcia's death.

13          The "constitutional interest in familial companionship and society logically extends to

14   protect children from unwarranted state interference with their relationships with their parents."

15   *Lee*, 250 F.3d at 685-86 (citation omitted).  And as stated above, constitutional protections are not

16   restricted to relationships among family members.  *Bd. of Directors of Rotary Int'l*, 481 U.S. at

17   545 ("[T]he First Amendment protects those relationships, including family relationships, that

18   'presuppose deep attachments and commitments to the necessarily few other individuals with

19   whom one shares not only a special community of thoughts, experiences, and beliefs but also

20   distinctively personal aspects of one's life.'" (quoting *Roberts*, 468 U.S. at 619-20)).  Rather, a

21

22   [1] Defendants' opening brief does not address Mr. Lopez's standing to bring a claim for loss of
     familial association based on the Fourteenth Amendment, an argument that Defendants raise for
23   the first time in their reply brief.  Instead, the opening brief only addresses Mr. Lopez's standing
     to bring a wrongful death claim, Mot. at 5-6, and Defendants "concede" in their reply brief that
24   "Eduardo Lopez has likely sufficiently established standing to pursue" that claim.  Reply at 8 n.2.
     The Court generally will not consider arguments raised for the first time in a reply brief.  *See TPK
25   Touch Sols., Inc v. Wintek Electro-Optics Corp.*, No. 13-CV-02218-JST, 2013 WL 5289015, at *4
     (N.D. Cal. Sept. 18, 2013) ("The Court does not consider new facts or argument made for the first
26   time in a reply brief.").  However, the Court will consider Defendants' argument because there is
     no prejudice to Plaintiffs, who addressed this argument in their opposition brief.  *See* Opp. at 20
27   ("Though Defendants fail to explicitly argue that Eduardo Lopez lacks standing to bring a loss of
     familial association claim, the vagueness of Defendants' motion requires Plaintiffs to briefly
28   address the issue.").  This is especially true given that the Court agrees with Plaintiffs on this
     issue.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    plaintiff's interest in bringing claims for loss of familial association is based on their relationship

2    with the decedent. *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1057-58 (9th Cir. 2018)

3    ("Judicially enforceable Fourteenth Amendment interests require enduring relationships reflecting

4    an assumption of parental responsibility and 'stem[] from the emotional attachments that derive

5    from the intimacy of daily association, and from the role it plays in promoting a way of life

6    through the instruction of children.'" (quoting *Lehr v. Robertson*, 463 U.S. 248, 256-61 (1983))).

7          Plaintiffs sufficiently allege a violation of Mr. Lopez's constitutional rights to familial

8    association. The Complaint alleges that Mr. Garcia was "a proud and devoted father" to Mr.

9    Lopez, that Mr. Garcia took Mr. Lopez "into his home when [Mr.] Lopez was three years old and

10   held [him] out as his own son," that Mr. Garcia "loved and treated [Mr.] Lopez equal to his

11   biological children, A.G. and E.G., and never distinguished [Mr.] Lopez as anything but his son,"

12   and that "[a]t the time of [Mr. Garcia's] death, [Lopez] lived with and was dependent on [Mr.

13   Garcia] for financial and other support." Compl. ¶¶ 5, 21. These undisputed allegations are

14   sufficient to show that Mr. Lopez and Mr. Garcia shared an "intimate association" right protected

15   under the First or Fourteenth Amendments. *See Wheeler*, 894 F.3d at 1057-58 ("Judicially

16   enforceable Fourteenth Amendment interests require enduring relationships reflecting an

17   assumption of parental responsibility and 'stem[] from the emotional attachments that derive from

18   the intimacy of daily association'").

19         Accordingly, the Court denies Defendants' motion to dismiss Mr. Lopez's loss of familial

20   association claim for lack of standing.

21         **B.    *Monell* Claim**

22         Defendants move to dismiss Plaintiffs' second cause of action, a *Monell* claim against

23   Defendant Napa County under 42 U.S.C. § 1983. "A government entity may not be held liable

24   under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a

25   moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d

26   892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S.

27   658, 694 (1978)). "In order to establish liability for governmental entities under *Monell*, a

28   plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was

1    deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate

2    indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force

3    behind the constitutional violation.'" *Id.* (citation omitted).

4           A plaintiff may establish *Monell* municipal liability under § 1983 even where the

5    municipality does not expressly adopt the alleged policy.  *See Webb v. Sloan*, 330 F.3d 1158, 1164

6    (9th Cir. 2003).  There are three alternative ways such liability can attach:  (1) "if an employee

7    commits a constitutional violation pursuant to a longstanding practice or custom;" (2) "when the

8    person causing the violation has final policymaking authority;" *id.*, and (3) "where the failure to

9    train amounts to deliberate indifference to the rights of persons with whom the police come into

10   contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  "[I]t is not enough for a §

11   1983 plaintiff merely to identify conduct properly attributable to the municipality." *Bd. of Cnty.*

12   *Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).  Rather, the plaintiff must "demonstrate that,

13   through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."

14   *Id*.  At the pleading stage, a plaintiff's *Monell* claim "may not simply recite the elements of a

15   cause of action, but must contain sufficient allegations of underlying facts" to provide the

16   opposing party with fair notice so it can defend itself.  *See AE ex rel. Hernandez v. Cnty. of*

17   *Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.

18   2011)).

19                        **iii.      Theories of Liability**

20          As discussed below, the Court concludes that Plaintiffs do not sufficiently plead any of

21   their theories of municipal liability.

22                        a.      Custom, Policy, and Practice

23          Plaintiffs pleads that the "actions and/or omissions of Defendants[] . . . were pursuant to

24   the following customs, practices, and/or procedures of [Defendant Napa County]."  Compl. ¶ 39.

25   The Complaint alleges that Napa County has the custom, policy, or practice (1) "[t]o use or

26   tolerate the use of unlawful deadly force;" (2) "[t]o cover-up violations of constitutional rights;"

27   and (3) "[t]o allow, tolerate, and/or encourage a 'code of silence' among law enforcement officers

28   and Sheriff's Office personnel." *Id.*

*United States District Court*
*Northern District of California*

1    A plaintiff may establish municipal liability by demonstrating "the constitutional tort was

2  the result of a 'longstanding practice or custom which constitutes the standard operating procedure

3  of the local government entity.'"  *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (quoting *Ulrich*

4  *v. City & Cnty. of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002)).  To establish liability on

5  the part of governmental entities under this theory, a plaintiff must show:

6    (1) that [the plaintiff] possessed a constitutional right of which [they]
     w[ere] deprived; (2) that the municipality had a policy; (3) that this
7    policy "amounts to deliberate indifference" to the plaintiff's
     constitutional right; and, (4) that the policy is the "moving force
8    behind the constitutional violation."

9  *Plumeau v. Sch. Dist. No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal

10 quotation marks omitted).

11   Courts have found vague assertions of municipal policies to be insufficient.  *See Sweiha v.*

12 *Cnty. of Alameda*, No. 19-CV-03098-LB, 2019 WL 4848227, at *4 (N.D. Cal. Oct. 1, 2019)

13 (dismissing *Monell* "longstanding practice or custom" claim where complaint's allegations of six

14 incidents had "markedly different facts" and "d[id] not show a custom that is so persistent and

15 widespread that it constitutes a permanent and well settled city policy" (cleaned up)); *Kollin v.*

16 *City of Tehachapi*, No. 18-CV-00617-LJO-JLT, 2018 WL 4057491, at *6 (E.D. Cal. Aug. 24,

17 2018) (dismissing *Monell* "practice or procedure" claim where complaint "begins from the

18 premise that the officer defendants acted unconstitutionally, then asserts various theories of

19 *Monell* liability for why the allegedly unconstitutional acts may have taken place, but without facts

20 to support those theories"); *see also Dougherty*, 654 F.3d at 900 ("Here, Dougherty's *Monell*

21 claim[] lack[s] any factual allegations that would separate [it] from the 'formulaic recitation of a

22 cause of action's elements' deemed insufficient by *Twombly*.").

23   The analysis to determine whether a plaintiff alleges an unconstitutional "policy" as

24 opposed to an unconstitutional "custom" or "practice" differs under *Monell*.  "Liability for

25 improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon

26 practices of sufficient duration, frequency and consistency that the conduct has become a

27 traditional method of carrying out policy."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

28 "However, with respect to an adopted municipal policy, a single incident can serve as the basis of

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1   a *Monell* claim so long as 'proof of the incident includes proof that it was caused by an existing,

2   unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.'"

3   *Bagley v. City of Sunnyvale*, No. 16-CV-02250-LHK, 2017 WL 344998, at *14 (N.D. Cal. Jan. 24,

4   2017) (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985)).

5         As to liability based on alleged customs, Plaintiffs only plead actions related to the

6   shooting of Mr. Garcia.  Plaintiffs do not allege any facts that suggest that the Napa County

7   Sherriff's office is regularly taking actions involving the use of unlawful deadly force, the cover-

8   up of constitutional violations, or the encouragement of a "code of silence."  Thus, Plaintiffs fail to

9   plausibly allege that the customs, policies, and practices are "founded upon practices of sufficient

10  duration, frequency and consistency that the conduct has become a traditional method of carrying

11  out policy." *Trevino*, 99 F.3d at 918.  Accordingly, Plaintiffs fail to adequately allege a "custom"

12  or "practice."

13        As to liability based on an officially adopted municipal "policy," Plaintiffs' allegations are

14  not sufficiently specific to plead a *Monell* claim.  Plaintiffs' allegations that Napa County has

15  policies "[t]o use or tolerate the use of unlawful deadly force, of covering up constitutional rights,

16  and for encouraging a "code of silence" fail for being too vague and insufficiently detailed to

17  adequately allege the policy at issue.  *See Mendy v. City of Fremont*, No. 13-CV-4180-MMC,

18  2014 WL 574599, at *3 (N.D. Cal. Feb. 12, 2014) (dismissing *Monell* claim based on unsupported

19  allegation of an "informal custom or policy that tolerates and promotes the continued use of

20  excessive force and cruel and unusual punishment against and violation of civil rights of citizens

21  by City police officers in the manner alleged [elsewhere in the complaint]"); *Bagley*, 2017 WL

22  344998, at *16 ("[Allegations] that Sunnyvale has a policy to cover up unconstitutional actions . . .

23  are vague and are insufficiently detailed to sufficiently allege the policy at issue"); *Hason v. City*

24  *of Los Angeles*, No. 11-CV-5382-SVW (JPR), 2014 WL 12852497, at *2 (C.D. Cal. Aug. 7, 2014)

25  (granting motion to dismiss *Monell* claim against city based on "vague allegations of a

26  department-wide 'code of silence'"; collecting cases); *Eng v. Pac. Clinics*, No. 12-CV-10892-

27  SVW-PJW, 2013 WL 12129611, at *4 (C.D. Cal. May 17, 2013) ("Plaintiffs' naked allegation of

28  a department-wide 'code of silence,' standing alone, is insufficient to support a *Monell* claim

9

1    against the County or the Sheriff's Department."). Thus, because Plaintiffs fail to sufficiently

2    allege the existence of Napa County policies that they claim caused the constitutional violations at

3    issue here, they fail to plead *Monell* liability based on an officially adopted policy.

                                b.        Failure to Train

4

5    "Failure to train may amount to a policy of 'deliberate indifference' if the need to train was

6    obvious and the failure to do so made a violation of constitutional rights likely." *Dougherty*, 654

7    F.3d at 900 (citing *City of Canton*, 489 U.S. at 390). To state a claim for failure to train, a plaintiff

8    must show (1) "the existing training program" is inadequate "in relation to the tasks the particular

9    officers must perform"; (2) the officials have been deliberately indifferent "to the rights of persons

10   with whom the police come into contact"; and (3) the inadequacy of the training "actually caused

11   the deprivation of the alleged constitutional right." *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765,

12   770 (9th Cir. 1989) (internal citations and quotation marks omitted).

13   The Complaint does not allege with sufficient specificity what training these deputies

14   received or how the training programs were inadequate. It only asserts that Defendants' training

15   programs were "clearly inadequate," Compl. ¶ 40, and that Defendants "failed to properly hire,

16   train, [and instruct]" their deputies "with deliberate indifference to Plaintiffs' constitutional

17   rights." *Id.* ¶ 41. Moreover, Plaintiffs' claim fails because they support their claim with

18   allegations about only one incident. *See Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153-54

19   (9th Cir. 2021) (applying standard on motion to dismiss and noting that "[a]s with single

20   violations of a written policy, '[T]hat a particular officer may be unsatisfactorily trained will not

21   alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from

22   factors other than a faulty training program.'" (quoting *City of Canton*, 489 U.S. at 390-91)); *see*

23   *also Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007) ("Because Blankenhorn

24   has limited his proof to the City's failure to train only Nguyen, he did not meet his burden to

25   withstand Defendants' motion for summary judgment."). "Indeed, a single incident cannot sustain

26   a failure to train except in the 'rare' circumstance that 'the unconstitutional consequences of

27   failing to train could be so patently obvious that a city could be liable under § 1983 without proof

28   of a preexisting pattern of violations.'" *Burns v. City of Concord*, No. 14-CV-00535 LB, 2014

United States District Court
Northern District of California

10

1   WL 5794629, at *16 (N.D. Cal. Nov. 6, 2014) (quoting *Connick v. Thompson*, 563 U.S. 51, 64

2   (2011)).  Such circumstances are not plausibly alleged here.

3          Accordingly, Plaintiffs' allegations are insufficient to state a *Monell* claim for municipal

4   liability based on a failure to train.

5                              c.      Ratification

6          A plaintiff may establish *Monell* liability where an "official with final policy-making

7   authority 'delegated that authority to, or ratified the decision of, a subordinate.'"  *Price*, 513 F.3d

8   at 966 (quoting *Ulrich*, 308 F.3d at 984-85).

9          Here, the Complaint alleges that the "actions and/or omissions of Defendants [] . . . were

10  approved, tolerated, and/or ratified by policymaking officers" for Defendant Napa County.

11  Compl. ¶ 42.  The Complaint further pleads that Napa County policymakers "have approved of . . .

12  and made a deliberate choice to endorse" the shooting of Mr. Garcia and the basis for that

13  shooting.  *Id.*  However, Plaintiffs' allegations are insufficient to plead a *Monell* ratification claim.

14  The Complaint does not allege that any of the policymakers who "approved of," "ratified," or

15  "endorse[d]" the Napa County deputies were individuals with "final policy-making authority."

16  *See Price*, 513 F.3d at 966; *see also Bagley*, 2017 WL 344998, at *17 ("Plaintiff does not identify

17  any person with official policymaking authority that ratified the actions of the officers.").  Instead,

18  Plaintiffs' conclusory and vague allegations simply track the legal standard and do not provide

19  detail sufficient for the Court draw the reasonable inference that Defendants are liable for the

20  misconduct alleged.  *See Sweiha*, 2019 WL 4848227, at *5 (dismissing ratification claim based

21  upon "conclusory" allegation); *Mondragon v. City of Fremont*, No. 18-CV-01605-NC, 2020 WL

22  1156953, at *4 (N.D. Cal. Mar. 10, 2020) (dismissing *Monell* ratification claim where the

23  "complaint contains vague conclusory statements rather than specific facts").

24                       **iv.    Causation**

25         Even if Plaintiffs had sufficiently pled their theories of municipal liability, their *Monell*

26  claim also fails because they have not adequately pled causation.

27         To sufficiently plead a *Monell* claim, a plaintiff must show that the government "had a

28  deliberate policy, custom, or practice that was the 'moving force' behind the constitutional

11

1    violation he suffered." *Galen v. County of L.A.*, 477 F.3d 652, 667 (9th Cir.2007) (quoting

2    *Monell*, 436 U.S. at 694-95); *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013)

3    ("To meet this requirement, the plaintiff must show both causation-in-fact and proximate

4    causation."); *see also Bd. of the Cnty. Comm'rs*, 520 U.S. at 404 ("[A] plaintiff . . . must

5    demonstrate a direct causal link between the municipal action and the deprivation of federal

6    rights."). "This inquiry has been described as a difficult one." *See Koistra v. Cnty. of San Diego*,

7    310 F. Supp. 3d 1066, 1086 (S.D. Cal. 2018) (citing *City of Canton*, 489 U.S. at 385-86).

8         Plaintiffs' *Monell* claim fails on this basis. Plaintiff's allegations of causation are

9    conclusory and do not make a causal connection between the custom, policy, or practice at issue

10   and any particular violation of a constitutional right. The Complaint alleges only that Napa

11   County's "failure to properly and adequately . . . train, . . ., as well as their unconstitutional

12   customs [and] practices, [and] ratification and toleration of wrongful conduct . . . w[ere] a moving

13   force and/or a proximate cause of the deprivations of Plaintiffs' and Decedent's clearly-established

14   and well-settled constitutional rights." Compl. ¶ 44. "Without facts alleging a 'direct causal link'

15   between a policy or custom and the alleged constitutional violation, a plaintiff cannot state a

16   *Monell* claim." *Anakin v. Contra Costa Reg'l Med. Ctr.*, No. 16-CV-00161-MEJ, 2016 WL

17   1059428, at *3 (N.D. Cal. Mar. 17, 2016) (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 404)

18   ("Plaintiff has not identified or alleged a policy, practice or custom that may have caused a

19   deprivation of his rights, and he fails to allege that such practice was the 'moving force' behind his

20   alleged injury"); *see also Dougherty*, 654 F.3d at 900-01 ("The Complaint lacked any factual

21   allegations regarding key elements of the *Monell* claims, or, more specifically, any facts

22   demonstrating that his constitutional deprivation was the result of a custom or practice of the City

23   of Covina or that the custom or practice was the 'moving force' behind his constitutional

24   deprivation."); *Est. of Adomako v. City of Fremont*, No. 17-CV-06386-DMR, 2018 WL 2234179,

25   at *4 (N.D. Cal. May 16, 2018) ("[T]he FAC states no non-conclusory facts as to Fremont's police

26   training policy or program and fails to plausibly allege any facts to support a causal link between

27   the training program and the Estate's excessive force claim."); *Cook v. Cnty. of Los Angeles*, No.

28   19-CV-2417-JVS-KLSX, 2021 WL 4353120, at *4 (C.D. Cal. July 28, 2021) ("[T]he TAC sets

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1    forth the aforementioned conclusory and vague statements, which lack sufficient factual content

2    regarding the specific nature and deficiencies of the alleged policy and fail to connect the alleged

3    policy as the cause of the purported harm.").  Finally, as stated above, where "Plaintiffs'

4    allegations only rely on the incident at issue, . . . that incident provides no basis for causation

5    because a custom 'may not be predicated on isolated or sporadic incidents.'"  *D.T. by & through*

6    *Tyler v. San Diego Metro. Transit Sys.*, 2019 WL 5863982, at \*6 (S.D. Cal. Nov. 8, 2019)

7    (quoting *Trevino*, 99 F.3d at 918) (dismissing excessive force *Monell* claim where plaintiff's

8    allegations only relied on incident at issue).  Thus, Plaintiffs have insufficiently alleged the

9    causation necessary to establish *Monell* liability.

10          Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' *Monell* claim.

11   **IV.    CONCLUSION**

12          For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART**

13   Defendants' motion as follows:

14          1.      Defendants' motion is **DENIED** as to Plaintiff Ms. Lopez's claim for loss of

15                  familial association.

16          2.      Defendants' motion is **DENIED** as to Plaintiff Mr. Lopez's claim for loss of

17                  familial association.

18          3.      Defendants' motion is **GRANTED** as to Plaintiffs' *Monell* claim with leave to

19                  amend.

20          If Plaintiffs can cure the pleading deficiencies described above, they must file any

21   amended complaint within 28 days from the date this order is filed.

22

23          **IT IS SO ORDERED.**

24   Dated: 1/12/2022

25

26   HAYWOOD S. GILLIAM, JR.
     United States District Judge

27

28