MICHAEL J. HADDAD (State Bar #189114)
JULIA SHERWIN (State Bar #189268)
TERESA ALLEN (State Bar #264865)
BRIAN HAWKINSON (State Bar #341856)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, CA 94612
T: (510) 452-5500
F: (510 452-5510
Attorneys for all Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN GARCIA, Deceased, through his Co-Successors in Interest, A.G. and E.G., minors, through their mother and Next Friend, EVA LOPEZ HERNANDEZ, and EDUARDO DANIEL LOPEZ RAMIREZ, Individually and as Co-Successors in Interest for JUAN GARCIA, Deceased; EVA LOPEZ HERNANDEZ, Individually; MARIA DEL CARMEN BAZAN MARTINEZ, Individually; and JOSE GARCIA FLORES, Individually,<br><br>   Plaintiffs,<br>vs.<br><br>COUNTY OF NAPA, a public entity; NAPA COUNTY SHERIFF'S SERGEANT DAVID ACKMAN, individually; and DOES 1 through 10, individually, jointly and severally,<br><br>   Defendants. | Case No: 4:21-cv-03519-HSG<br><br>**NOTICE OF MOTION AND MOTION TO AMEND FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  November 10, 2022<br>Time:  2:00 p.m.<br>Courtroom: 2 – 4th Floor<br>Judge:  Hon. Haywood S. Gilliam, Jr.<br>Trial Date: April 17, 2023<br>Action Filed: May 11, 2021 |

**NOTICE AND MOTION TO AMEND COMPLAINT**

TO ALL DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

Please take notice that Plaintiffs will move the Court for an order allowing them to file the proposed Second Amended Complaint ("SAC") set forth in Exhibit A to the Declaration of Brian Hawkinson, on November 10, 2022, at 2:00 p.m. in Courtroom 2, 4th Floor, United States District Court, 1301 Clay Street, Oakland, CA 94612.

This motion to file a Second Amended Complaint is made on the grounds that amendment of pleadings is to be liberally granted and is proper under these facts. This is Plaintiffs' first motion to amend the complaint, and would be Plaintiffs' second time amending their complaint. The SAC seeks to plead a *Monell* claim based on facts not known to Plaintiffs at the time of filing their First Amended Complaint (FAC), and not known to Plaintiffs until well after expiration of the Court's leave to amend granted upon dismissing the *Monell* claim in Plaintiffs FAC. After meeting and conferring, Defendants have not stipulated to the filing of the SAC, necessitating this motion.

This motion is based on the following Memorandum of Points and Authorities filed in support of this motion, all documents and records in the Court record in this matter, and on such further written and oral argument and evidence as may be submitted.

Dated:  October 4, 2022                    HADDAD & SHERWIN LLP


                                            /s/ *Brian Hawkinson*
                                            _____
                                            BRIAN HAWKINSON
                                            Attorneys for Plaintiffs

**TABLE OF CONTENTS**

STATEMENT OF FACTS ........................................................................................................... 1

PROCEDURAL HISTORY ........................................................................................................ 3

LEGAL ARGUMENT ................................................................................................................. 3

    A.    COURTS LIBERALLY GRANT MOTIONS TO AMEND PLEADINGS ....................... 3

    B.    PLAINTIFFS SATISFY ALL OF THE FACTORS FOR AMENDMENT ........................ 4

        1.    Defendants Will Not Be Prejudiced by the Amended Complaint ........................... 4

        2.    The Proposed Amendment Is Not Unduly Delayed ............................................... 5

        3.    Plaintiffs Seek this Amendment in Good Faith ...................................................... 7

        4.    The Amendment Is Not Futile ................................................................................ 8

            a.    Sheriff Robertson and Undersheriff Dodd Ratified Defendant Ackman's Conduct .................................................................................. 8

            b.    Sheriff Robertson's and Undersheriff Dodd's Determinations that Defendant Ackman's Conduct was Within the NSCO's Actual Policies, Procedures, and Customs are Evidence of Existing Policies, Procedures, and Customs that Condoned and Set in Motion Defendant Ackman's Unconstitutional Use of Force .................. 11

CONCLUSION AND RELIEF REQUESTED ........................................................................ 13

# TABLE OF AUTHORITIES

## Cases

*Akey v. Placer Cnty.*,
   No. 2:14-cv-2402 KJM DB
   2017 U.S. Dist. LEXIS 70162  (E.D. Cal. May 8, 2017)..................................................................6

*Au Hoon v. City of Honolulu*,
   No. 89-16305
   1991 U.S. App. LEXIS 379; 1991 WL 1677 (9th Cir. Jan. 10, 1991)............................................9

*Brinker v. Astrue*,
   No. C 10-03091-SBA
   2012 U.S. Dist. LEXIS 102354 (N.D. Cal. July 23, 2012)..............................................................8

*Broudo v. Dura Pharms., Inc.*,
   339 F.3d 933 (9th Cir. 2003) ...........................................................................................................7

*City of St. Louis v. Praprotnik*,
   485 U.S. 112 (1988)..................................................................................................................8, 11

*Christie v. Iopa*,
   176 F.3d 1231 (9th Cir. 1999) .....................................................................................................8, 9

*Clouthier v. Cnty. of Contra Costa*,
   591 F.3d 1232 (9th Cir. 2010) .........................................................................................................8

*Country Fresh Batter, Inc. v. Lion Raisins, Inc.*,
   No. 1:17-cv-01527-DAD-BAM
   2018 U.S. Dist. LEXIS 117269 (E.D. Cal. July 13, 2018) ..........................................................5, 6

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ...........................................................................................................8

*DCD Programs Ltd. V. Leighton*,
   833 F.2d 183 (9th Cir. 1987) .......................................................................................................3, 4

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) .........................................................................................................4

*Foman v. Davis*,
   371 U.S. 178 (1962)........................................................................................................... 3, 4, 5, 7

*Galindo v. Stoody Co.*,
   793 F.2d 1502 (9th Cir. 1986) .........................................................................................................6

*Genentech, Inc. v. Abbott Laboratories*,
    127 F.R.D. 529 (N.D. Cal. 1989) ................................................................................... 4

*Gillette v. Delmore*,
    979 F.2d 1342 (9th Cir. 1992) ...................................................................................... 8

*Greenfield v. Am. W. Airlines, Inc.*,
    No. C 03-05183 MHP
    2004 U.S. LEXIS 23163 (N.D. Cal. Nov. 12, 2004) ..................................................... 7

*Griggs v. Pace Am. Group, Inc.*,
    170 F.3d 877 (9th Cir. 1999) .................................................................................. 4, 7

*Haugen v. Brosseau*,
    393 F.3d 857 (9th Cir. 2003) ...................................................................................... 12

*Henry v. Cnty. of Shasta*,
    132 F.3d 512 (9th Cir. 1997) ...................................................................................... 12

*Hip Hop Beverage Corp. v. RIC Representcoes Importacao e Comercio Ltda.*,
    220 F.R.D. 614 (C.D. Cal. 2003) ................................................................................. 4

*Howey v. United States*,
    481 F.2d 1187 (9th Cir. 1973) ...................................................................................... 6

*Hurn v. Retirement Fund Trust of the Plumbing, Heating, and Piping Industry of S. Cal.*,
    648 F.2d 1252 (9th Cir. 1981) ...................................................................................... 5

*Jackson v. Bank of Haw.*,
    902 F.2d 1385 (9th Cir. 1990) ...................................................................................... 6

*Kersh v. Derozier*,
    851 F.2d 1509 (5th Cir. 1988) .................................................................................... 11

*Knight v. Nimrod*,
    No. 00-0290 SBA
    2007 U.S. Dist. LEXIS 68549 (N.D. Cal. Sept. 7, 2007) ............................................. 5

*Larez v. Los Angeles*,
    946 F.2d 630 (9th Cir. 1991) ........................................................................... 9, 10, 12

*Lassiter v. City of Bremerton*,
    556 F.3d 1049 (9th Cir. 2009) ...................................................................................... 9

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
    194 F.3d 980 (9th Cir. 1999) ........................................................................................ 4

*Lytle v. Carl*,
    382 F.3d 978 (9th Cir. 2004) .................................................................................................. 10

*McRorie v. Shimoda*,
    795 F.2d 161 (9th Cir. 1986) ................................................................................................. 10

*Miller v. Rykoff-Sexton, Inc.*,
    845 F.2d 209 (9th Cir. 1988) ................................................................................................... 8

*Morongo Band of Mission Indians v. Frank Rose*,
    893 F.2d 1074 (9th Cir. 1990) .............................................................................................. 4, 5

*Nordyke v. King*,
    644 F.3d 776 (9th Cir. 2011) ................................................................................................... 8

*Perkins v. City of Modesto*,
    No. 1:19-cv-00126-NONE-EPG
    2022 U.S. Dist. LEXIS 18466 (E.D. Cal. Feb. 1, 2022) ....................................................... 12

*Rosales v. City of Chico*,
    CIV. No. 2:14-02152 WBS CMK
    2015 U.S. Dist. LEXIS 142577 (E.D. Cal. Oct. 20, 2015) ................................................... 12

*Sonoma Cnty. Ass'n. of Retired Employees v. Sonoma Cnty.*,
    708 F.3d 1109 (9th Cir. 2013) ................................................................................................. 3

*Sorosky v. Burroughs Corp.*,
    826 F.2d 794 (9th Cir. 1987) ................................................................................................... 7

*Thomas v. Cannon*,
    Nos. 3:15-05346 BJR; 3:16-cv-05392,
    2017 U.S. Dist. LEXIS 80800 (W.D. Wash. May 25, 2017) ................................................ 12

*Trevino v. Gates*,
    99 F.3d 911 (9th Cir. 1996) ..................................................................................................... 8

*United States v. Webb*,
    655 F.2d 977 (9th Cir. 1981) ............................................................................................... 5, 6

*Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A.*,
    802 F. Supp.2d 1078 (N.D. Cal. 2011) ................................................................................... 8

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 8

Fed. R. Civ. P. 15(a)(2) ................................................................................................................ 4

Fed R. Civ P. 15(b) ................................................................................................................... 6

**Other Authorities**

3 Moore's Federal Practice § 15.08(4) ....................................................................................... 6

Ninth Cir. Model Civ. Jury Instr. § 9.7 (2017 ed.) ................................................................. 8, 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF FACTS

This is a civil rights wrongful death/survival action arising from the unreasonable and excessive use of force by Defendant Napa County Sheriff's Sergeant David Ackman, resulting in the wrongful death of Juan Garcia.  On October 5, 2020, Defendant Ackman shot Mr. Garcia six times, without any verbal warning, during a traffic stop after Mr. Garcia, who was unarmed, exited his car and approached Defendant Ackman while appearing confused as to Defendant Ackman's instructions, or lack thereof.  Mr. Garcia died in the hospital the next day.  Defendants are Sgt. Ackman and the County of Napa.  Plaintiffs are Mr. Garcia's three surviving children, individually and on behalf of Mr. Garcia, as his co-successors in interest, Mr. Garcia's long-time life partner, and Mr. Garcia's parents.

On October 14, 2020, just nine days after Defendant Ackman fatally shot Mr. Garcia, Napa County Sheriff John Robertson held a press conference during which he publicly ratified Defendant Ackman's conduct in shooting Mr. Garcia, declaring: "After reviewing [video footage from Defendant Ackman's body-worn camera], we have determined that [Defendant Ackman] acted according to policy and also according to his training."  (Hawkinson Decl., Ex. A, SAC, ¶ 38).  Former Sheriff Robertson recently testified that he made that statement in his capacity as Sheriff on behalf of the Sheriff's Department.  (*Id.*)  Sheriff Robertson has also testified that he made that statement without viewing the dash cam video footage from Defendant Ackman's patrol car, without having talked to Defendant Ackman about the incident, without knowing what Defendant Ackman told investigators about the incident, and before either the criminal investigation or the official Internal Affairs investigation were complete.  (*Id.*)

Nine months later, on July 23, 2021, Napa County Undersheriff Cullen Dodd, on behalf of the Sheriff's Office, likewise signed off on an Internal Affairs Investigation Report concluding that Defendant Ackman acted properly and within NCSO policy guidelines during the incident in which he shot and killed Mr. Garcia.  (Hawkinson Decl., Ex. A, SAC, ¶ 39).  It was the Sheriff Office's usual practice at that time for the Undersheriff to make the final decision about whether a deputy's use of deadly force was within department policy.  (*Id.*).  The report was not critical of any of Defendant Ackman's conduct during the incident, despite that Undersheriff Dodd knew or must have known from his review of the

videos and investigation the following: that Defendant Ackman pointed his gun at Mr. Garcia before Mr. Garcia even exited his vehicle; that video of the incident shows Defendant Ackman could see both of Mr. Garcia's hands, which were empty, for several seconds after Mr. Garcia exited from his car; that when Defendant Ackman instructed Mr. Garcia to "turn around," Mr. Garcia appeared to turn sideways and place both hands behind his back as if to be handcuffed; that Defendant Ackman gave no verbal warning that he was going to shoot Mr. Garcia, despite that a warning was feasible; that Defendant Ackman did not see a weapon when he shot Mr. Garcia; that Defendant Ackman merely "assumed" that Mr. Garcia had a gun, without any objective facts to support that subjective assumption; that Defendant Ackman stated he felt very afraid throughout the entire incident; and that Defendant Ackman shot Mr. Garcia six times, including four shots fired when Mr. Garcia was leaning forward with both of his hands clearly in front of his body, visibly empty. (*Id*.). Undersheriff Dodd chose not to review Mr. Garcia's autopsy report – which indicates that five of the six bullets that struck Mr. Garcia travelled through his body at a downward or sharply downward trajectory – despite knowing the autopsy report existed and was accessible to him. (*Id*.). Undersheriff Dodd specifically reviewed all of the available video, including in slow motion, many times, as well as the complete Internal Affairs investigation and Defendant Ackman's complete interview. (*Id*.).

Plaintiffs seek to amend their FAC to include a *Monell* claim based on the above-described ratifications of Defendant Ackman's conduct. (Hawkinson Decl., ¶ 3). Facts supporting Plaintiffs' amended *Monell* claim include facts not known to Plaintiffs at the time of filing the FAC, nor at the expiration of the leave to amend period granted by this Court upon dismissing the *Monell* claims in Plaintiffs' FAC. (*Id*.). That includes information contained in the Internal Affairs Investigation Report of the incident and information obtained through the recent depositions of Sheriff Robertson and Undersheriff Dodd. (*Id*.). Defendants did not disclose the Internal Affairs Investigation Report to Plaintiffs until June 8, 2022, despite that it should have been among the documents responsive to Plaintiffs' RFP1, served roughly nine months prior. (Hawkinson Decl., ¶ 4). In July of 2022, Plaintiffs' counsel reached out to Defense counsel about deposing Sheriff Robertson and Undersheriff Dodd. (Hawkinson Decl., ¶ 5). Defendants did not agree to make them available for depositions until September 21, 2022. (*Id*.). At the conclusion of those depositions, Plaintiffs' counsel informed Defense counsel that

Plaintiffs intended to file an amended complaint adding a *Monell* claim based on ratification. (Hawkinson Decl., ¶ 6). The parties met and conferred, and Defense counsel did not agree to stipulate to allow Plaintiffs to file an amended complaint. (*Id.*). Accordingly, Plaintiffs bring this motion to amend before the Court. Although fact discovery closed on October 3, 2022, the amendments to the complaint proposed herein will not require any additional discovery. (Hawkinson Decl., ¶ 7).

## PROCEDURAL HISTORY

Defendants filed a Motion to Dismiss ("MTD1") portions of Plaintiffs' Complaint on August 3, 2021. (Doc. 13). On August 19, 2021, Plaintiffs filed a First Amended Complaint ("FAC") as a matter of right under FRCP 15(a)(1). (Doc. 18). On August 24, 2021, this Court issued an order finding Defendants' MTD1 moot, since Plaintiffs' original complaint was no longer operative. (Doc. 22). On September 2, 2021, Defendants filed a Motion to Dismiss ("MTD2") portions of Plaintiffs' FAC. (Doc. 24). On January 12, 2022, this Court issued an order granting in part and denying in part Defendants' MTD2. (Doc. 39). The Court dismissed Plaintiffs' *Monell* claim finding a lack of plausible, specific facts to support that claim, with leave to freely amend within 28 days. (*Id.*). At the hearing, Plaintiffs' counsel recalls this Court suggesting that should discovery develop facts to support a *Monell* claim, then Plaintiffs could consider seeking to amend to add that claim then under the Federal Rules.

## LEGAL ARGUMENT

### A. COURTS LIBERALLY GRANT MOTIONS TO AMEND PLEADINGS

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Supreme Court mandates that "in the absence of any apparent or declared reason . . . the leave [to amend] should, as the rules require, be 'freely given.'" *Id.*

Courts should only deny motions to amend "if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment …" *Sonoma Cnty. Ass'n. of Retired Employees v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013)(citation omitted).

"Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). "This liberality in granting leave to amend is

not dependent on whether the amendment will add causes of action or parties." *DCD Programs Ltd. V. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). "Furthermore, since Rule 15 favors a liberal policy towards amendment, the nonmoving party bears the burden of demonstrating why Leave to amend should not be granted." *Genentech, Inc. v. Abbott Laboratories*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989) (citation omitted).

### B. PLAINTIFF SATISFIES ALL OF THE FACTORS FOR AMENDMENT

The Supreme Court has identified four factors to determine whether to grant a motion for leave to amend pleadings, including whether: (1) there will be prejudice to the opposing party; (2) the amendment is unduly delayed; (3) the moving party is acting in bad faith or with a dilatory motive; and (4) amendment will be futile. *Foman*, 371 U.S at 182. Courts should generally perform this analysis "with all inferences in favor of granting the motion." *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

The most important factor is whether the amendment will prejudice the opposing party. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Prejudice is the touchstone of the inquiry under Rule 15(a)" (internal quotations omitted)). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.* (emphasis in original, citation omitted).

### 1. Defendants Will Not Be Prejudiced by the Amended Complaint

"'Undue prejudice' means substantial prejudice or substantial negative effect; the Ninth Circuit has found such substantial prejudice where the claims sought to be added 'would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense.'" *Hip Hop Beverage Corp. v. RIC Representcoes Importacao e Comercio Ltda.*, 220 F.R.D. 614, 622 (C.D. Cal. 2003) (quoting *Morongo Band of Mission Indians v. Frank Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). "A need to reopen discovery and therefore delay the proceedings supports a . . . finding of prejudice from a delayed motion to amend the complaint." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).

The party opposing amendment bears the burden of showing substantial prejudice. *DCD Programs*, 833 F.2d at 186.

Defendants cannot meet the burden of showing substantial prejudice, and the proposed amendments would neither substantially alter the nature of the litigation nor create an entirely new case. *Hurn v. Retirement Fund Trust of the Plumbing, Heating, and Piping Industry of S. Cal.*, 648 F.2d 1252, 1254 (9th Cir. 1981) (where operative facts remain the same, parties should be fully prepared to litigate the issues).

Here, Defendants will not be prejudiced by any need to reopen discovery, which is unnecessary. The *Monell* claim in Plaintiffs' SAC relies on ratifications by Sheriff Robertson and Undersheriff Dodd that are already supported in the record, with supporting facts included in the proposed SAC.[1] Depositions of both officials have already been taken. No further discovery, nor expert opinion, is needed on the issue of their ratifications of Defendant Ackman's conduct. See *Knight v. Nimrod*, No. 00-0290 SBA, 2007 U.S. Dist. LEXIS 68549, *6 (N.D. Cal. Sept. 7, 2007) (granting motion for leave to amend where new claim for injunctive relief would not require additional discovery). Further, because *Monell* liability premised on ratification ultimately turns on whether the underlying act was unconstitutional, there is no prejudice to defendants in the form of any substantial alteration of the nature of the litigation.

Plaintiffs anticipate that Defendants will argue that they will be prejudiced by not being able to address Plaintiffs' *Monell* claim in their Motion for Summary Judgement, which is due by October 20, 2022. However, under the futility prong of the *Foman* factors, arguments concerning the merit of Plaintiffs' *Monell* claim – based on simple and undisputed facts – would be essentially the same arguments that Defendants would make in a summary judgment motion. As the facts supporting this claim are not in dispute, it is hard to imagine a viable summary judgment argument should the Court find that the claim is legally and plausibly pleaded; however, should the Court decide that Defendants must be permitted to move for summary judgment on the *Monell* claim, then Plaintiffs would not object to Defendants being permitted to file a second summary judgment motion limited to this claim.

---

[1] The amended portions of Plaintiffs' SAC include the "Count Two" section concerning *Monell* liability, an exhibit attached to the end of the SAC which includes screenshots from Defendant ACKMAN's body-worn camera, and the removal of references to DOE Defendants throughout the complaint. (Hawkinson Decl., ¶ 8).

**2. The Proposed Amendment Is Not Unduly Delayed**

Delay alone, "no matter how lengthy," is never a sufficient ground for denying leave to amend. *Webb*, 655 F.2d at 980.  *See also*, *Morongo*, 893 F.2d at 1079 (though relevant, a two-year delay is "not alone enough to support denial").  Even undue delay, by itself, does not justify denial of leave to amend. *Webb*, 655 F.2d at 980; *Hurn*, 648 F.2d at 1254.  "Delay by a party in seeking leave to amend is only one of several factors for the court's consideration, and it is not the most important." *See Country Fresh Batter, Inc. v. Lion Raisins, Inc.*, No. 1:17-cv-01527-DAD-BAM, 2018 U.S. Dist. LEXIS 117269, *8 (E.D. Cal. July 13, 2018) (citing *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990)).  The Ninth Circuit has repeatedly held that the fact that a party could have amended a complaint earlier does not constitute a basis for denying leave to amend. *See, e.g., Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973) (granting leave to amend five years after the original pleadings); *Webb*, 655 F.2d at 980 ("'The mere fact that an amendment is offered late in the case is . . . not enough to bar it.'") (quoting 3 Moore's Federal Practice § 15.08(4) at 15-102).  Amendment of pleadings may be proper even at trial or after trial.  *See* Fed R. Civ P. 15(b); *Galindo v. Stoody Co.*, 793 F.2d 1502, 1513 (9th Cir. 1986).

As explained above, the *Monell* claim in Plaintiffs' SAC relies on facts only recently discovered by Plaintiffs – including facts from an Internal Affairs Investigation Report previously undisclosed to Plaintiffs and facts from depositions of policymaking officials taken less than two weeks before the filing of this motion.  See *Akey v. Placer Cnty.*, No. 2:14-cv-2402 KJM DB, 2017 U.S. Dist. LEXIS 70162, *24-27 (E.D. Cal. May 8, 2017) (granting motion to amend *Monell* claims and related motion to continue expired discovery deadline, finding no undue delay where plaintiffs' proposed amendments relied on testimony from recent depositions, despite that plaintiffs saw need to amend and alerted defendants to that fact over a month before moving to amend).

Here, Defendants did not produce the Internal Affairs Investigation Report until June 8, 2022, after Plaintiffs' counsel followed up on documents missing from Defendants RFP1 production, which Plaintiffs needed for Defendant Ackman's deposition, which took place June 17, 2022.  (Hawkinson Decl., ¶ 4).  Shortly thereafter, Plaintiffs sought to depose Undersheriff Dodd and former Sheriff John Robertson.  (Hawkinson Decl., ¶ 5).

On July 20, 2022, Plaintiffs' counsel informed Defense counsel via email that Plaintiffs wished to depose former Napa County Sheriff John Robertson and the person who ultimately decided that Defendant Ackman's shooting was within NSCO policy, if that person was someone other than Sheriff Robertson. (Hawkinson Decl., ¶ 5). On July 27, 2022, after receiving no response from Defense counsel, Plaintiffs' counsel informed Defense counsel via email that they intended to notice Sheriff Robertson's deposition for August 23, 2022, if defense counsel did not respond by the next day. (*Id*.). On July 28, 2022, Defense counsel responded that they were looking into the matter and would respond by early the following week. (*Id*.). On August 4, 2022, having received no such response, Plaintiffs noticed the deposition of Sheriff Robertson for August 23, 2022. (*Id*.). The next day, Defense counsel informed Plaintiffs' counsel via email that they intended to object to the deposition of Sheriff Robertson per the Apex Deponent doctrine. (*Id*.). On August 12, 2022, Defense counsel reiterated their intent object to Sheriff Robertson's deposition, and informed Plaintiffs that Undersheriff Dodd had signed off on the Internal Affairs Report exonerating Defendant Ackman. (*Id*.). Over the next ten days, the parties exchanged emails and phone calls concerning a stipulation to extend the discovery deadline and scheduling the depositions of Sheriff Robertson, Undersheriff Dodd, Plaintiff Eva Lopez, Plaintiff Eduardo Lopez, Plaintiff Maria Bazan, Plaintiff Jose Garcia, and two of Mr. Garcia's brothers. (*Id*.). Defendants did not agree to make Sheriff Robertson and Undersheriff Dodd available for depositions until September 21, 2022. (*Id*.).

Though the instant motion to amend comes around the close of fact discovery, Plaintiffs have not acted with undue delay.

### 3. Plaintiffs Seek this Amendment in Good Faith

A motion to amend may be denied when made in bad faith – to cause undue delay or for some other improper purpose. *Foman*, 371 U.S at 182; *See Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987) (upholding denial of leave to amend where the district court found that plaintiff was acting in bad faith by seeking to add a defendant to destroy diversity jurisdiction). Amendments should be permitted when any claimed delay was not in bad faith. *Griggs*, *supra*, 170 F.3d at 881.

As shown herein, Plaintiffs have proper reasons to seek this amendment, which will not cause undue delay.

No: 4:21-cv-03519-HSG:  MOTION TO AMEND FIRST AMENDED COMPLAINT    7

Further, the new facts added in Plaintiffs' SAC supporting their *Monell* claim serve the good faith purpose to "provide additional evidence that would add necessary details" to the complaint, and leave to amend should be granted. *Greenfield v. Am. W. Airlines, Inc.*, No. C 03-05183 MHP, 2004 U.S. LEXIS 23163 *11 (N.D. Cal. Nov. 12, 2004) (quoting *Broudo v. Dura Pharms., Inc.*, 339 F.3d 933, 941 (9th Cir. 2003) (internal quotations omitted)).

**4. The Amendment Is Not Futile**

"A proposed amended complaint is futile if it would be immediately subject to dismissal." *Brinker v. Astrue*, No. C 10-03091-SBA, 2012 U.S. Dist. LEXIS 102354, at *15 (N.D. Cal. July 23, 2012) (citing *Nordyke v. King*, 644 F.3d 776, 788, n.12 (9th Cir. 2011)). In assessing futility, courts apply the same standard as the one used in considering the sufficiency of a pleading challenged under Fed. R. Civ. Proc. 12(b)(6) and look only to the facts pleaded in the proposed amended complaint. *Nordyke*, *supra* (citing *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). "Thus, in assessing the allegations of a proposed pleading, the Court 'accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light most favorable to the [Plaintiff].'" *Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A.*, 802 F. Supp. 2d 1078, 1086 (N.D. Cal. 2011), rev'd on other grounds, 517 Fed. Appx. 589 (9th Cir. 2013) (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

**a. Sheriff Robertson and Undersheriff Dodd Ratified Defendant Ackman's Conduct**

Recognized paths to *Monell* liability include: (1) an unconstitutional custom or policy behind the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or have a needed policy; and (3) a final policy-maker's involvement in, or ratification of, the conduct underlying the violation of rights. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010).

In *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988), a plurality of the Supreme Court recognized the relevance of ratification to what may be chargeable to a municipality in the §1983 context:

> When a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*See also* Ninth Cir. Model Civ. Jury Instr. § 9.7 (2017 ed.).

Consistent with *Praprotnik*, the Ninth Circuit has held that ratification liability may attach when a final policymaker ratifies a subordinate's unconstitutional conduct and the basis for it. *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). This occurs when the official policy maker "has adopted and expressly approved of the acts of others who caused the constitutional violation." *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996). There must be evidence that the policymaker made a deliberate choice to endorse the subordinate's actions. *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992). "A single decision by a municipal policymaker 'may be sufficient to trigger Section 1983 liability under *Monell*, even though the decision is not intended to govern future situations,' but the plaintiff must show that the triggering decision was the product of a 'conscious and affirmative choice' to ratify the conduct in question." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1055 (9th Cir. 2009). "Ordinarily, ratification is a question for the jury." *Christie*, 176 F.3d at 1238-39.

Ratification, by its very nature, happens post-incident. See Ninth Cir. Model Civ. Jury Instr. § 9.7 (2017 ed.) (explaining that ratification may be chargeable to municipality in § 1983 context, despite that it occurs after an allegedly wrongful act); *Au Hoon v. City of Honolulu*, No. 89-16305, 1991 U.S. App. LEXIS 379, *12, 1991 WL 1677, *4 (9th Cir. Jan. 10, 1991) ("It is not correct to say that only actions approved in advance are 'ratified' for purposes of imposing liability on a municipality under section 1983. To do so confuses decisionmaking authority with policymaking authority, and further ignores the fact that ratification demonstrates that the act was consonant with the policy of the entity.")

Here, policymaking officials for the County of Napa twice ratified Defendant Ackman's conduct in the incident resulting in Mr. Garcia's wrongful death. First, then-Sheriff Robertson held a press conference nine days after the incident, during which he publicly and deliberately stated: "After reviewing [video footage from Defendant Ackman's body-worn camera], we have determined that [Defendant Ackman] acted according to policy and also according to his training." (Hawkinson Decl., Ex. A, SAC, ¶ 38). Former Sheriff Robertson later testified that he was speaking as the Sheriff on behalf of the Sheriff's Department when he made that statement. (*Id*.). He also admitted that, at the time of that statement, he had not reviewed Defendant Ackman's in-car camera, had not spoken to Defendant Ackman about the incident, and had not heard what Defendant Ackman told investigators about the incident, and that neither the criminal investigation nor the official Internal Affairs investigation were complete. (*Id*.). Still,

regardless whether Sheriff Robertson intended his approval of the shooting to govern future situations, he made the "conscious and affirmative choice" to publicly endorse Defendant Ackman's conduct, thereby ratifying it. *Lassiter*, 556 F.3d at 1055.

Sheriff Robertson's public statements to the media are relevant to Plaintiffs' *Monell* claim based on ratification. In *Larez v. Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991), the Court found that various public statements made by Los Angeles Chief of Police Daryl Gates were admissible as evidence supporting claims against Gates and the city of Los Angeles. "Where the principal allegations in this case include among them that Gates set a tone which condoned and encouraged the use of excessive force, we can hardly think of better evidence than statements consistent with those claims." *Id*. (citing *McRorie v. Shimoda*, 795 F.2d 161. 171 (9th Cir. 1986) ("Policy or custom may be inferred if, after [constitutional violations], . . . officials took no steps to reprimand or discharge [their subordinates], or if they otherwise failed to admit the [subordinates'] conduct was in error."). The Court held that "[t]o the extent the opinions shed light on the operation, customs, or policy of his department, ***or on his ratification and condonation of injurious acts***, his statements, if admitted upon retrial, may, of course, be used as evidence on the issue of his liability ***and on that of the City***." 946 F.2d at 645 (emphasis added). The Court ultimately affirmed that the city was liable under *Monell*, holding that "the jury properly could find such policy or custom [of resorting to the use of excessive force] from the failure of Gates to take any remedial steps after the violations." *Id*. at 647.

Roughly nine months after Sheriff Robertson's ratification, Undersheriff Dodd approved the Internal Affairs Investigation Report exonerating Defendant Ackman of any misconduct in shooting Mr. Garcia.[2] (Hawkinson Decl., Ex. A, SAC, ¶ 39). Undersheriff Dodd approved of Defendant Ackman's conduct during the incident despite knowing from his review of videos and Defendant Ackman's statement that Defendant Ackman pointed his gun at Mr. Garcia before Mr. Garcia exited his car; that video of the incident shows that Defendant Ackman could see both of Mr. Garcia's hands, which were

---

[2] Undersheriff Dodd testified that as general procedure, around October of 2020 and afterward, it was NCSO policy that the duty to review and make final decisions on behalf the department on any internal affairs conclusions was delegated to the Undersheriff. (Hawkinson Decl., Ex. A, SAC, ¶ 39). Accordingly, Undersheriff Dodd was a final policymaker for NCSO. See *Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004) ("For a person to be a final policymaker, he or she must be in a position of authority such that a final decision by that person may appropriately be attributed to the [defendant public body].").

empty, for several seconds after Mr. Garcia exited from his car; that when Defendant Ackman told Mr. Garcia to "turn around," Mr. Garcia appeared to turn sideways and place both his hands behind his back as if to be handcuffed; that Defendant Ackman did not see a weapon when he shot Mr. Garcia; that Defendant Ackman merely "assumed" Mr. Garcia had a gun, without any objective facts to support that subjective assumption; that Defendant Ackman stated he felt very afraid throughout the entire incident; and that Defendant Ackman gave no verbal warning before shooting Mr. Garcia. (*Id.*).  Undersheriff Dodd specifically reviewed all of the available video, including in slow motion, many times, as well as the complete Internal Affairs investigation and Defendant ACKMAN's complete interview. (*Id.*).  At his deposition, Undersheriff Dodd acknowledged that screenshots of the shooting produced by Plaintiffs' counsel show that Mr. Garcia was leaning forward with both hands in front of him, empty, before Defendant Ackman fired the third, fourth, fifth, and sixth shots that struck Mr. Garcia. (*Id.*) (See also Hawkinson Decl., Ex. A, SAC, Exhibit A).  Undersheriff Dodd also knew there was an autopsy report for Mr. Garcia, but admitted he did not review the autopsy report, which indicates that the trajectory of most of the gunshot wounds sustained by Mr. Garcia were downward or sharply downward. (Hawkinson Decl., Ex. A, SAC, ¶39).  Despite all that, Undersheriff Dodd still stands by his decision that Defendant Ackman acted appropriately and lawfully during the incident, and approves of all his tactics and decisions and the bases for them.

Based on Undersheriff Dodd's approval of Defendant Ackman's conduct and the basis for it, issued after a formal investigation and review as described above, his ratification would be chargeable to the County.  *Praprotnik*, *supra*, 485 U.S. at 127.

      **b. Sheriff Robertson's and Undersheriff Dodd's Determinations that Defendant Ackman's Conduct was Within the NSCO's Actual Policies, Procedures, and Customs are Evidence of Existing Policies, Procedures, and Customs that Condoned and Set in Motion Defendant Ackman's Unconstitutional Use of Force**

Several courts have held that an official policymaker's pronouncement that an officer's conduct was within departmental policy is evidence of a policy for the purposes of a *Monell* claim.  For example, in *Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1988), the parties had stipulated that the acts and omissions of two individually-named defendants were "in compliance with the actual customs, policies, and practices" of the defendant city.  The district court ruled that the stipulation "automatically triggered" the city's liability "if the individual defendants were found liable." *Id*. at 1513.  On appeal, defendant-

appellants argued the parties in the stipulation did not admit that the city's custom or policy was *causally* related to the alleged constitutional violations.  *Id*.  The Fifth Circuit Court affirmed the lower court's ruling, explaining that in light of the jury's determination that the two individual defendants deprived the plaintiff of his constitutional rights, "the plain meaning of the words in the stipulation" forced the conclusion that "the customs and policies of the city necessarily operated to deprive [plaintiff] of his constitutional rights[.]"  *Id*.

      See also *Larez*, *supra*, 946 F.2d at 645 ("To the extent the opinions of Chief Gates shed light on the operation, custom, or policy of his department, or on his ratification or condonation of the injurious acts, his statements, if admitted upon retrial, may, of course, be used as evidence on the issue of his liability and that of the City."); *Henry v. Cnty. of Shasta,* 132 F.3d 512, 519 (9th Cir. 1997), *amended on denial of rehearing,* 132 F.3d 512 (9th Cir.1997) ("[P]ost-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but is highly probative with respect to that inquiry.");  *Rosales v. City of Chico*, CIV. No. 2:14-02152 WBS CMK, 2015 U.S. Dist. LEXIS 142577, *20-21 (E.D. Cal. Oct. 20, 2015) (finding that Chief of Police's pronouncement that subordinate's alleged use of force was in compliance with department policy gave rise to *Monell* claim, and was "tantamount to the announcement or confirmation of a policy for purposes of Monell.") (quoting *Haugen v. Brosseau*, 393 F.3d 857, 875 (9th Cir. 2003), *overruled on other grounds by*, 543 U.S. 194 (2004)); *Perkins v. City of Modesto*, No. 1:19-cv-00126-NONE-EPG, 2022 U.S. Dist. LEXIS 18466, *9-10, 50-54 (E.D. Cal. Feb. 1, 2022) (finding disputed issues of material fact were established as to the existence of a relevant municipal policy, where policymakers found subordinate's actions were within policy) ; *Thomas v. Cannon*, Nos. 3:15-05346 BJR; 3:16-cv-05392, 2017 U.S. Dist. LEXIS 80800, *40-41 (W.D. Wash. May 25, 2017) ("A rational jury could find that [subordinate's] decision to shoot was not constitutionally justified, and that [policymaker] ratified that unconstitutional decision by determining it was lawful and within policy.").

      Here, both Sheriff Robertson and Undersheriff Dodd stated on behalf of the NCSO that Defendant Ackman's conduct in the incident resulting in Mr. Garcia's death was entirely consistent with the NCSO's actual policies, procedures, and customs of that time.  Those statements, particularly when considered

together, are "not only admissible for purposes of proving the existence of [Defendant County's] policy or custom, but [are] highly probative with respect to that inquiry." *Henry*, *supra*, 132 F.3d at 519.

"It necessarily follows that should a jury determine that Defendant Ackman's uses of force were unlawful, then according to these top policy-makers' explicit findings and admissions, NCSO's actual policies, practices, and customs condoned that unlawful use of force." (SAC, ¶ 43).

## CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion to File a Second Amended Complaint.

Respectfully Submitted,

Dated: October 4, 2022                    HADDAD & SHERWIN LLP

                                          */s/ Brian Hawkinson*
                                          BRIAN HAWKINSON
                                          Attorneys for Plaintiffs